PERILSTEIN GLASS CORPORATION, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF, v. SHIELD-WELL ALUMINUM CORP., A CORPORATION OF THE STATE OF NEW YORK, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided November 1, 1962.

94

*Mr. Joshua M. Levin* for William A. Fasolo, receiver (*Messrs. Levin & Chenkin,* attorneys).

*Mr. Joseph M. Levinsohn* for United States Extrusions Corporation and Excelum Aluminum Products Corporation.

COLLESTER, J. S.. C. This matter comes before this court upon the petition of the receiver of Shield-Well Aluminum Corp., an insolvent corporation, for an order directing the United States Extrusions Corporation and the Excelum Aluminum Products Corporation, creditors of the insolvent corporation, to turn over the sums of $7,840.86 and $2,016.24, respectively, allegedly paid to them by Shield-Well Aluminum Corp. as preferential payments while the latter was insolvent. The pertinent facts are as follows.

On May 11, 1961 the plaintiff Perilstein Glass Corporation (Perilstein), a corporation of the State of New York filed a complaint with a supporting affidavit in this court alleging that Shield-Well Aluminum Corp. (Shield-Well), a corporation of the State of New York, authorized to do business in New Jersey and engaged in the business of manufacturing, selling and installing storm doors and storm windows at 82 Sherman Place, Garfield, New Jersey, was insolvent. Perilstein, a creditor of Shield-Well, sought the appointment of a receiver. Upon the filing of the complaint an order issued out of this court directing Shield-Well to show cause on May 18, 1961 why a judgment should not be entered adjudging the defendant corporation insolvent, enjoining it, its officers and agents from exercising any of its corporate privileges, and appointing a receiver. On May 18, 1961, the return day of said order, this court entered an

order adjudging Shield-Well insolvent and appointing William A. Fasolo a receiver for said corporation.

The petition of the receiver recites that a special audit report prepared by accountants appointed by this court reveals that from at least July 31, 1960 to May 8, 1961 Shield-Well was insolvent and that during said period Shield-Well made preferential payments of $7,840.86 to United States Extrusions Corporation (Extrusions), a Delaware corporation doing business in Nassau County, New York, and $2,016.24 to Excelum Aluminum Products Corporation (Excelum), a New York corporation. The receiver, in a summary proceeding on his petition and order to show cause, seeks to compel these nonresident corporations to turn over to said receiver the alleged preferential payments.

The facts before this court further show that on May 18, 1961, the date Shield-Well was adjudged insolvent by this court, the two nonresident corporations filed in the New York courts confessions of judgment against Shield-Well; Extrusions in the amount of $32,000, and Excelum in the amount of $18,000. Thereafter Extrusions Corp. and Excelum, through their New Jersey attorney, filed claims with the receiver for such money.

The defendants in this proceeding, Extrusions and Excelum, contest the jurisdiction of this court to hear and determine the receiver's petition for an order directing them to turn over the alleged preferential payments. While conceding that they have filed claims with the receiver in this State, appointed by this court, they contend that since they are nonresident corporations the receiver has no right to proceed against them in this summary manner, and that jurisdiction can be acquired only by a plenary suit instituted by the receiver in the State of New York.

The question presented is a novel one. In *Grobholz v. Merdel Mortgage Investment Co.*, 115 *N. J. Eq.* 411 (*E. & A.* 1933), the receiver of the insolvent corporation, upon filing "a report of receiver and inventory," secured an order to show cause why the directors of the insolvent corporation

should not account for and pay over to the receiver certain money allegedly due to the corporation. The court held that as against *strangers to the record* who hold adversely property of the insolvent company, at the time of the appointment of the receiver, the receiver must proceed by adverse action, namely, by an independent, plenary suit and not in a summary proceeding.

In *Tager v. Coronet Curtain Corp.*, 128 *N. J. Eq.* 537 (*Ch.* 1941), the court held that where a creditor of an insolvent corporation filed a petition in the cause seeking affirmative relief against the receiver based upon his alleged rights under an assignment of the corporation's accounts receivable prior to insolvency, the receiver had a right in a summary proceeding not only to raise a defense to the creditor's claim but to counterclaim for money paid to the creditor for an unlawful preference. The court held that by instituting proceedings the creditor placed directly before the court the validity of the assignments; that he thereby waived his right to a trial of his claim in a plenary suit rather than by summary proceedings, and that the receiver could assert a counterclaim seeking affirmative relief when the subject matter of the counterclaim is relevant or interrelated to the subject matter of the creditor's petition.

In the matter *sub judice* the creditors have filed claims against the receiver. They have not petitioned this court for relief, as in *Tager*. The issue is whether or not by filing their claims with the receiver the creditors have consented to the jurisdiction of this court to determine setoffs or counterclaims against them by the receiver in a summary proceeding, or whether the receiver is required to institute a plenary proceeding against them to obtain the relief he seeks.

In *Grobholz, supra,* at *page* 419, the court stated:

"Since the earliest case, *State Bank v. Receivers of the Bank of New Brunswick* (1835) 3 *N. J. Eq.* 266, and up to the present time, it is the settled law that in the decisions of questions arising in the administration of the assets of an insolvent corporation, the courts

of this state have uniformly regarded our statute as essentially a bankrupt act and applied the doctrines which have controlled in bankruptcy proceedings. *Butler v. Commonwealth Tobacco Co.*, 74 *N. J. Eq.* 423; *Nutz v. Murray-Nutz, Inc.*, 109 *N. J. Eq.* 95, see *page* 99."

In the case of *In re Nathan*, 98 *F. Supp.* 686 (*S. D. Cal.* 1951), the court held that a creditor by presenting his claim for examination and allowance against a bankrupt's estate, impliedly consents to adjudication by the bankruptcy court, in summary proceedings, of not only the merits of the claim and of any defenses or setoffs thereto, but also the merits of any counterclaim for affirmative judgment which the trustee in bankruptcy may properly assert in response to the claim, and such filing of claim in bankruptcy gives the consent necessary to confer jurisdiction on the bankruptcy court to adjudicate counterclaims for preferential payments. *In re Nathan* is quoted with approval by the United States Court of Appeals, Third Circuit, in the case of *In re Solar Manufacturing Corporation*, 200 *F. 2d* 327, 330 (1952).

In our State the power of the receiver to demand, sue for, collect, receive and take into his possession all property of every description, including rights and credits of the corporation, is prescribed by statute, *N. J. S. A.* 14:14–7. Every claim against the insolvent corporation must be presented in writing under oath to the receiver, and the claimant, if required, shall submit himself to such examination and produce such books and papers relating thereto as the receiver shall direct. The receiver may examine, under oath or affirmation, all witnesses produced before him touching the claims, and shall pass upon and allow or disallow the same. *R. S.* 14:14–15.

Any person aggrieved by the proceedings or determination of the receiver in the discharge of his duty, shall be entitled to a review of the receiver's action in a *summary manner* by the court. *N. J. S. A.* 14:14–17.

In the matter *sub judice* the two creditors take the position that the receiver must accept and allow their claims based upon their New York judgments, and that the receiver in a

summary proceeding before this court cannot by setoff or counterclaim recover payments made to these creditors by the insolvent corporation which allegedly constitute unlawful preferences over other creditors.

■ I cannot agree with this contention. These claimants are not *"strangers to the record,"* as was the case in *Grobholz, supra.* In my opinion, by filing their claims with the receiver they impliedly consented to the jurisdiction of this court, not only to consider the merits of their respective claims but to also consider all defenses, setoffs and counterclaims asserted by the receiver for unlawful preferential payments which arose out of such transactions.

In my opinion these issues can be raised and determined in a summary proceeding before this court.

■ The creditors have raised the further issue that their claims have been reduced to judgment in New York and are entitled to full faith and credit under the *Federal Constitution.* The undisputed facts show that the judgments were based upon book accounts of the creditors which were reduced to judgment by means of a "confession of judgment" entered on the date Shield-Well was adjudged insolvent. The answer to this contention is provided by statute.

*N. J. S. A.* 14:14–25 provides that all judgments obtained against a corporation at any time when the corporation shall be insolvent, and within four months prior to the making of the application against it for the appointment of a receiver, *shall be deemed null and void* in case a receiver shall be appointed by the court. See also *Salzman v. Merchants Realty Co.* 118 *N. J. Eq.* 459 (*Ch.* 1935).

An order will be entered fixing a date for hearing before this court to consider the claims presented by Extrusions and Excelum against the insolvent corporation, and the setoffs or counterclaims of the receiver for the alleged unlawful preferential payments made to said creditors.

An order in accord with this opinion will be presented, consented to as to form, or settled on notice pursuant to the provisions of *R. R.* 4:55–1.